# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **PEGGY ANN VOTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:13-cv-00033** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | **Magistrate Judge Susan E. Cox** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## Order

For the reasons outlined, Ms. Vota's motion for summary judgment is denied [dkt. 15] and the Commissioner's motion for summary judgment is granted [dkt. 18].

## Statement

Claimant, Ms. Peggy Ann Vota, seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"), which denied her application for disability insurance benefits under the Social Security Act ("the Act") from June 1, 2010 through April 9, 2012. On April 9, 2012, her age category changed and the Commissioner awarded her disability benefits on that date. Here, Ms. Vota seeks to reverse the Commissioner's final decision or remand the case for reconsideration of benefits from June 1, 2010 to April 9, 2012. In response, the Commissioner has filed a motion for summary judgment seeking to affirm the Commissioner's decision. For the reasons set forth below, Ms. Vota's motion to remand is denied [dkt. 15] and the Commissioner's motion to affirm is granted [dkt. 18].

# I.      Procedural Background

On June 6, 2011, Ms. Vota filed for disability insurance benefits, alleging that she became disabled on June 1, 2010.[1] Her claim was denied initially on August 9, 2011, and again denied upon reconsideration on January 24, 2012.[2] On February 28, 2012, Ms. Vota requested a hearing by an Administrative Law Judge ("ALJ").[3] On August 30, 2012, ALJ Patricia Witkowski Supergan presided over a video hearing from Orland Park, Illinois.[4] Following the hearing, the ALJ issued a decision on September 7, 2012, concluding that Ms. Vota was not disabled under the Act prior to April 9, 2012, but became disabled from that date going forward.[5] The Appeals Council denied Ms. Vota's request for review, making the ALJ's decision the final decision of the Commissioner.[6]

# II.     Factual Background

Ms. Vota filed a disability claim alleging that she is disabled due to degenerative disc disease, anxiety and depression.[7] The relevant background information is limited to her employment history, medical history, the ALJ hearing testimony, and the final ALJ decision.

## A. Employment History

Ms. Vota was born April 10, 1957, and was fifty-five years old at the time of her hearing on August 30, 2012.[8] For purposes of this appeal, her available employment history is limited to less than three years as a classroom aid at Serena Grade School.[9] Ms. Vota testified at her hearing before the ALJ that she had to take off work because of her back pain, and that played a role in the school's

---

[1] R. at 145. Ms. Vota originally alleged that she became disabled on June 1, 2009, but later amended her application.
[2] R. at 75, 82.
[3] R. at 89.
[4] R. at 11.
[5] R. at 12.
[6] R. at 1.
[7] R. at 14.
[8] R. at 145.
[9] R. at 187.

decision not to rehire her.[10] She testified that it was difficult to stand in one position for a long period of time at work and difficult to clean the lunchroom tables.[11] After her full time employment ended, Ms. Vota worked part time as a classroom aid substitute at Ottawa Elementary until June 3, 2011.[12]

## B. Ms. Vota's Medical History

Ms. Vota's available medical records are limited to 2008 to 2012 and demonstrate a history of treatment for degenerative disc disease and associated back pain beginning in 2008 and a history of treatment for anxiety and depression beginning in 2011. The discussion of her medical history will be divided into two sections: her treating doctors, chiropractor and counselor and her treatment and evaluations by State agency physicians and psychologists.

### 1. Ms. Vota's Treaters

The available medical records show that Gary Koehn, M.D., Mark A. McVay, D.O., and Daniel Miller, D.C. treated Ms. Vota for her degenerative disc disease and related back pain. Ms. Vota also sought treatment with Dawn McCollum, L.C.S.W., for 11 months for depression and anxiety.[13] Dr. Koehn treated Ms. Vota for back pain and radiculopathy[14] prior to the alleged onset date of June 1, 2010.[15] Dr. Koehn noted that Ms. Vota had low back pain and multi generative bulging lumbar disc disease.[16] He noted that she should limit herself to a light to light-medium workload.[17] The records indicate that Dr. Koehn treated her until February 2009.[18]

---

[10] R. at 36-37.
[11] *Id.*
[12] R. at 177-178, 187.
[13] R. at 445-469.
[14] Radiculopathy is defined as a pathologic process affecting the nerves at the root level. It can cause problems and pain in the neck from nerves being irritated or pinched. TED L. FREEMAN, D.O. ET AL., PHYSICAL MEDICINE AND REHABILITATION BOARD REVIEW (New York: Demos Medical Publishing 2004).
[15] R. at 289-296.
[16] R. at 295.
[17] *Id.*
[18] *Id.*

After Ms. Vota was injured in a car accident in March 2011, she sought treatment from Dr. Miller, a chiropractor. Dr. Miller treated Ms. Vota for back and neck pain nearly 40 times between April and November 2011.[19] After approximately one month of treatment, Dr. Miller stated that "Ms. Vota is progressing as expected" and "the prognosis for Ms. Vota is good at this time."[20] Throughout treatment Dr. Miller noted that Ms. Vota had a normal gait and normal reflexes in her arms and legs, but she had a limited range of motion in her neck and back.[21] On November 16, 2011, the last visit provided in this record, Dr. Miller opined that Ms. Vota's progress was "moving along as expected" but that she had not yet met her maximum medical improvement.[22] Dr. Miller filled out a disability form on Ms. Vota's behalf, finding lumbar disc degeneration, cervical disc degeneration, cervical segmental dysfunction, and lumbar segmental dysfunction.[23] In his opinion, Ms. Vota could stand or walk for twenty minutes at one time and could sit or stand for twenty or thirty minutes at one time.[24] He further stated that Ms. Vota was unable to lift or carry ten pounds, and needed to include periods of walking around during an eight hour work day.[25]

Additionally, Ms. Vota sought treatment from Dr. McVay, her primary care provider, for back and neck pain as well as depression and anxiety. This relationship continued for approximately six months beginning in April 2011.[26] Dr. McVay prescribed Ms. Vota a muscle relaxer and pain medication.[27] Regarding her mental health, Dr. McVay diagnosed Ms. Vota with depression and anxiety.[28] Dr. McVay adjusted her medication in August 2011 after Ms. Vota complained of

---

[19] R. at 387-434.
[20] R. at 389.
[21] R. at 301-302.
[22] R. at 434.
[23] R. at 381.
[24] R. at 382.
[25] *Id.*
[26] R. at 437.
[27] R. at 363, 368.
[28] R. at 368.

financial and physical stressors.[29] Dr. McVay filled out a disability form on behalf of Ms. Vota. In this form, he noted that Ms. Vota was limited in her ability to complete a normal workday without interruptions, ability to perform work at a constant pace, ability to get along with co-workers and peers, ability to travel in unfamiliar places or use public transportation.[30] He opined that Ms. Vota is unsuitable for employment due to her mental health condition.[31]

In addition to Dr. McVay, Ms. McCollum treated Ms. Vota for her depression and anxiety.[32] Ms. Vota attended approximately 23 counseling sessions with Ms. McCollum, a licensed clinical social worker, from February to December 2011.[33] Throughout counseling, they discussed depression, anxiety, and pain management.[34] During their sessions, Ms. McCollum counseled Ms. Vota on situation stressors, such as family problems, including her recent divorce, financial difficulties, and her pain treatment.[35]

### 2. State Agency Doctors

After applying for disability in June 2011, State agency physician Julio Pardo, M.D. and state agency psychologists Mark B. Langgut, Ph.D and Phyllis Brister, Ph.D. evaluated Ms. Vota's condition. Dr. Pardo evaluated Ms. Vota's physical impairments in July 2011.[36] According to Dr. Pardo, Ms. Vota could lift and carry twenty pounds occasionally and ten pounds frequently, could perform light household chores, could stand for six out of eight hours at a time, could sit for six of eight hours at a time, and could climb, balance, stoop, kneel, crouch, or crawl occasionally.[37] Dr.

---

[29] R. at 363.
[30] R. at 355-57.
[31] *Id.*
[32] R. at 445-469.
[33] *Id.*.
[34] *Id.*
[35] *Id.*
[36] R. at 325.
[37] R. at 319-320.

Pardo considered Ms. Vota's complaints of pain, but concluded that she was capable of light work with some postural limitations.[38]

Dr. Langgut, a State agency psychologist, also evaluated Ms. Vota in July 2011.[39] Dr. Langgut noted that Ms. Vota "[d]emonstrated adequate judgment, responsibility and arithmetic reasoning skills as well as an ability to understand the effects of her actions on herself and others."[40] Upon testing, he found that Ms. Vota demonstrated difficulty with long term memory, but her short term memory and immediate recall were intact.[41] He determined that Ms. Vota's diagnostic considerations included dysthymic disorder, anxiety disorder with panic features, and remission of alcohol abuse, but he deferred a final diagnosis.[42]

State agency psychologist Dr. Brister also reviewed Ms. Vota's medical records in August 2011.[43] Dr. Brister concluded that Ms. Vota had mild restrictions in activities of daily living and social functioning and had moderate restrictions in concentration, persistence and pace.[44] Dr. Brister found that Ms. Vota could understand, recall and execute simple, routine tasks and could adapt to routine changes.[45]

C.A. Gotway, M.D. and Lionel Hudspeth, PsyD reviewed Ms. Vota's medical records in January 2012 after she filed her request for reconsideration.[46] After reviewing Dr. Pardo's evaluation

---

[38] R. at 319-320, 325.
[39] R. at 330.
[40] R. at 330.
[41] R. at 329-330.
[42] R. at 330.
[43] R. at 342.
[44] R. at 342.
[45] R. at 348.
[46] R. at 435-437.

of Ms. Vota, Dr. Gotway agreed with and affirmed his findings.[47] Likewise, Dr. Hudspeth adopted the findings of Dr. Brister after reviewing the medical file.[48]

### B. The Hearing Before the ALJ

At the hearing, the ALJ heard testimony from (1) Ms. Vota, (2) Wanda Valiente, a friend and roommate of Ms. Vota, and (3) Ms. Tucker, the vocational expert.

#### 1. Ms. Vota's Testimony

At the hearing, Ms. Vota testified that she has had constant pain in her lower back, hip area and leg and suffered fatigue since June 2010.[49] Ms. Vota testified that she worked as a classroom aid until May 2010, helping the teacher with various tasks such as reading and sitting with the kids and monitoring them at recess.[50] She testified that she had difficulty with standing and walking and she had to take 15 to 18 days off of work due to her pain.[51] She testified that since June 2010, she has not worked full time.[52] She testified that she worked occasionally as a substitute at Ottawa Elementary School from August 2011 through September 2011, and has not worked since then.[53]

Ms. Vota testified that as of June 1, 2010, she was having constant pain in her lower back, hip area, and right leg, and had difficulty sleeping.[54] She testified that her ability to walk and stand was affected, but did not say how long she could stand or walk at one time.[55] Ms. Vota stated that she was involved in a car accident in March 2011, which aggravated her pain and stress.[56]

---

[47] R. at 437.
[48] R. at 437.
[49] R. at 37.
[50] *Id.*
[51] R. at 36-37.
[52] R. at 42.
[53] R. at 43-45.
[54] R. at 37-38.
[55] R. at 38-39.
[56] R. at 40.

Ms. Vota testified that she began living with Wanda Valiente in June 2012.[57] She also testified that she is capable of performing some household chores. For example, while her roommate must bring the laundry down to the basement, Ms. Vota is able to wash and fold clothes.[58] She can participate in basic cooking, such as making sandwiches and cutting up groceries, although she may need to nap afterwards.[59]

### 2. Wanda Valiente's Testimony

Wanda Valiente, Ms. Vota's roommate, also testified at the hearing. Ms. Valiente testified that prior to living with Ms. Vota, she visited her two or three times a month to help Ms. Vota with chores such as vacuuming.[60] She testified that Ms. Vota appeared to be in pain in June 2010, the alleged onset date of disability.[61] She testified that as her roommate, she helps Ms. Vota around the house with chores such as moving heavy laundry baskets, cleaning the floors, and vacuuming and helps her with her grocery shopping.[62]

### 3. The Vocational Expert's Testimony

Ms. Tucker, the vocational expert in the case, testified regarding her professional opinion of Ms. Vota's work abilities. Ms. Tucker explained that her position as a teacher's aid is classified as light, semi-skilled.[63] She testified that a person of Ms. Vota's age, educational level, and work experience, would not be able to perform her past jobs.[64] However, she testified that there are ample other jobs that Ms. Vota would be capable of performing.[65] The hypothetical posed to the vocational

---

[57] R. at 45.
[58] R. at 49-50.
[59] R. at 50.
[60] R. at 54.
[61] R. at 55.
[62] R. at 54.
[63] R. at 62.
[64] R. at 63.
[65] R. at 63.

expert asked if an individual of Ms. Vota's age, education, and work experience would be able to preform light work, could occasionally climb ramps, stairs, and scaffolds, could occasionally balance and stoop but never kneel and crouch and crawl, and could learn by demonstration or in 30 days or less.[66] In response, Ms. Tucker testified that Ms. Vota could not perform any of her past work but she could perform many other jobs, including positions as an office helper, mail clerk, and laborer.[67]

Next, she was asked about a more specific hypothetical:

Q: If I were to further limit this individual to jobs involving occasional decision making, occasional change in work setting, no fast paced or production quotas. What effect would that have on the number of jobs?[68]

In response, Ms. Tucker testified that there would be ample positions available for an individual fitting this description.[69] Lastly, she was asked: "[i]f an individual was likely to be off task for 25% of the work day, would there be jobs?" Ms. Tucker testified that there would not be any jobs available for this individual.[70]

### C. The ALJ's Decision

In an opinion issued on September 7, 2012, the ALJ concluded that Ms. Vota was not disabled within the meaning of the Act until April 9, 2012.[71] The ALJ found that Ms. Vota's age category changed on April 9, 2012, thereby qualifying her as a disabled person under Medical-Vocational Rule 202.06 from that day going forward.[72]

---

[66] *Id.*
[67] R. at 63.
[68] R. at 64.
[69] R. at 64.
[70] R. at 64.
[71] R. at 22.
[72] R. at 22.

SSA regulations prescribe a sequential five-part test for ALJs to use in determining whether a claimant is disabled.[73] The ALJ's first step is to consider whether the claimant is presently engaged in any substantial gainful activity which would preclude a disability finding.[74] In this case, the ALJ determined that Ms. Vota has not engaged in any substantial gainful activity since the alleged onset date of June 1, 2010.[75]

The ALJ's second step is to consider whether the claimant has a severe impairment or combination of impairments.[76] If the claimant does not have severe impairments, she is not disabled under the Act.[77] The ALJ found that Ms. Vota had the severe impairments of degenerative disc disease, anxiety, and depression.[78]

The third step is for the ALJ to consider whether the claimant's impairments meet or equal any impairment listed in the regulations as being so severe as to preclude gainful activity.[79] In the present case, the ALJ determined that Ms. Vota's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[80] The ALJ found that Ms. Vota's impairments did not satisfy the criteria under the Act.[81]

If the claimant's impairment or combination of impairments do not satisfy step three, the ALJ then considers step four, which is a two-step process. First, the ALJ determines the claimant's residual functional capacity ("RFC").[82] The RFC is an assessment of the maximum work-related

---

[73] 20 C.F.R. § 404.1520(a)(1).
[74] 20 C.F.R. § 404.1520(a)(4)(I).
[75] R. at 13.
[76] 20 C.F.R. § 404.1520(a)(4)(ii).
[77] *Id.*
[78] R. at 14.
[79] 20 C.F.R. § 404.1520(a)(4)(iii).
[80] R. at 14.
[81] R. at 14 - 15.
[82] 20 C.F.R. § 404.1520(a)(4)(iv).

activities a claimant can perform despite her impairments.[83] The ALJ must first determine whether there is an underlying medically determinable impairment–an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce claimant's symptoms.[84] If such an impairment exists, the ALJ then evaluates the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's functioning.[85] If, after this process, the ALJ determines that the claimant's RFC makes her able to perform her past work, she is not found to be disabled.[86]

In the present case, the ALJ found that Ms. Vota has the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; and she can perform unskilled work tasks that can be learned by demonstration or in 30 days or less."[87] In determining Ms. Vota's credibility, the ALJ noted that her impairments could reasonably be expected to cause her alleged symptoms.[88] However, the ALJ found that Ms. Vota's statements concerning the intensity and persistence of her symptoms were not credible because they were inconsistent with the RFC assessment.[89]

Regarding her alleged physical disabilities, the ALJ noted that Ms. Vota's medical records indicate that she has a history of treatment for back pain *prior* to the alleged onset date.[90] Since the alleged onset date of June 2010, Ms. Vota's medical records demonstrate limited and conservative treatment of back pain by Dr. McVay, her primary care physician, and Dr. Miller, her chiropractor.[91]

---

[83] 20 C.F.R. § 404.1525.
[84] S.S.R. 96-7p.
[85] *Id.*
[86] S.S.R. 96-8p.
[87] R. at 15.
[88] R. at 16.
[89] *Id.*
[90] *Id.*
[91] *Id.*

According to the ALJ, Ms. Vota's medical records did not demonstrate "significant treatment for back and neck pain in 2010."[92]

The ALJ discussed Dr. McVay and Dr. Miller's treatment of Ms. Vota in 2011. The ALJ noted that Ms. Vota saw Dr. McVay after her car accident in March 2011, and he prescribed her pain medication and muscle relaxers.[93] The ALJ further noted that Dr. Miller's examination of Ms. Vota in April 2011 described her gait and upper and lower extremities' reflexes as normal, but described her spinal range of motion as limited.[94] The ALJ stated that by May 2011, Ms. Vota reported improvement in her neck and back pain, and was able to ride a bicycle without difficulty in June 2011.[95] The ALJ found that Ms. Vota received regular chiropractic care and reported fluctuating severity in her pain, and that her pain only somewhat affected her daily activities. The ALJ found that "the medical evidence does not indicate that [Ms. Vota] is unable to engage in all work activities," even though she has undergone routine and conservative treatment for back and neck pain.[96] The ALJ accommodated Ms. Vota's alleged difficulty concentrating due to physical pain by limiting her unskilled work tasks that can be learned by demonstration in 30 days or less.[97] The ALJ determined that the aforementioned medical records and evidence establishes that Ms. Vota would overall be capable of performing light, unskilled work on a sustained basis with some additional limitations.[98]

Regarding mental health impairments, the ALJ noted that Ms. Vota's medical records reveal a history of depression and anxiety prior to the alleged onset date that was treated by medication.[99]

---

[92] Id.
[93] Id.
[94] Id.
[95] Id.
[96] R. at 17.
[97] Id.
[98] R. at 16.
[99] R. at 17.

The ALJ considered her treatment after the alleged onset date, which consisted of periods of counseling and medication prescribed by Dr. McVay.[100] The ALJ noted that, according to the medical records, Ms. Vota's reported symptoms of depression and anxiety were generally related to situational stressors.[101] She noted that Ms. Vota attended counseling sessions with Ms. McCollum, a licensed clinical social worker, to discuss situational stressors such as family relationship issues, and how her pain affected her psychological state.[102] The ALJ noted that in her July 2011 consultation with Dr. Langgut, the state agency psychologist, Ms. Vota reported that she only had symptoms on some days, her activity level was normal, and her emotions were consistent with her thoughts.[103] She further considered Dr. Langgut's findings upon testing, which revealed Ms. Vota's immediate recall and short term memory were intact, even though she exhibited difficulty with long term memory.[104]The ALJ found that, based on these considerations, Ms. Vota sought treatment for her mental health after the alleged onset date, but the medical records only revealed a few clinical abnormalities and symptoms associated with situational stressors.[105] Thus, the ALJ accommodated these mental health impairments and symptoms by limiting her to unskilled work tasks that can be learned by demonstration in 30 days or less.[106]

In addition to the medical evidence, the ALJ considered Ms. Vota's daily living situation. The ALJ noted that in 2011, Ms. Vota could perform various tasks on her own, including laundry, dusting, preparing simple meals such as sandwiches, driving, and she could even ride her own

---

[100] *Id.*
[101] *Id.*
[102] R. at 18.
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*

bicycle.[107] She noted that Ms. Vota needed assistance with tasks such as vacuuming, carrying groceries, doing yard work, and making her bed.[108]

Next, in the ALJ's discussion of the opinion evidence, she gave great weight to the opinions of the State agency medical consultants and psychological consultants.[109] Specifically, the ALJ gave great weight to the opinion that Ms. Vota can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, can stand and walk for a total of six hours and sit for a total of six hours in an eight hour work day, and to the opinion that.[110] Ms. Vota can occasionally climb ramps, stairs, ladders, ropes, kneel, balance, stoop and crouch.[111] The ALJ afforded their opinions such weight because their opinions were supported by the medical evidence which showed "routine and conservative treatment for the claimant's back and neck pain."[112]

Similarly, she gave great weight to the State agency psychological consultants' opinions that Ms. Vota had mild limitations in her ability to understand, remember and carry out detailed instructions, and to work with others without being distracted by them.[113] The ALJ gave their opinions such weight because the opinions were generally supported by Ms. Vota's mental health treatment and evaluations received at the initial and reconsideration levels.[114] The ALJ noted that the records received at the hearing level did not support any further limitations to her mental abilities.[115]

The ALJ gave some weight to the opinions of Dr. McVay, Ms. Vota's primary care

---

[107] R. at 19.
[108] Id.
[109] Id.
[110] Id.
[111] Id.
[112] Id.
[113] Id.
[114] Id.
[115] Id.

physician, and Dr. Miller, Ms. Vota's treating chiropractor.[116] The ALJ afforded Dr. McVay some

weight because his treatment records did not support the extensive limitations that he offered in the

disability form he filled out on behalf of Ms. Vota.[117] The ALJ noted that Dr. McVay's records did

not generally include abnormal psychiatric clinical findings, nor did her counseling notes support

such extensive limitations.[118]

    The ALJ also gave some weight to the opinion of Dr. Miller for three reasons. First, Dr.

Miller is a chiropractor, which is not an acceptable medical source whose opinions may be afforded

controlling weight.[119] Second, the medical evidence "[did] not support limitations of standing for

only 20 to 30 minutes at a time or less and that she needs to change positions every 20 to 30 minutes

for 10 to 15 minutes."[120] Finally, the medical evidence documents only routine and conservative

treatment of Ms. Vota's back and neck pain.[121]

    The ALJ considered but gave little weight to Wanda Valiente's testimony. The ALJ noted

that the medical evidence indicated that Ms. Vota was able to perform work at the light exertional

level.[122] The ALJ stated "[t]o the extent that Ms. Valiente opine[d] that the claimant is further

limited, that opinion is not supported by the evidence as a whole."[123] The ALJ also gave some weight

to Rebecca Pagliano, Ms. Vota's daughter.[124] Again, the ALJ noted that the evidence supported a

finding that Ms. Vota is limited to performing light work with some additional limitations, and the

---

[116] R. at 20.
[117] *Id.*
[118] *Id.*
[119] *Id.*; *see* C.F.R. 404.1513(a), 416.913(a) (not listing chiropractors as an acceptable medical source, but stating that an ALJ *may* use chiropractor's notes to show severity of the impairment).
[120] R. at 20.
[121] *Id.*
[122] R. at 20.
[123] *Id.*
[124] *Id.*

evidence does not support a finding that she requires additional limitations.[125]

In the final step of this analysis, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education and work experience.[126] If the claimant is not able to do other work and meets the duration requirement, she is disabled.[127]

The ALJ found that since June 1, 2010, Ms. Vota's past relevant work exceeded her RFC.[128] However, the ALJ found that prior to April 9, 2012, Ms. Vota was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.[129] The ALJ considered the testimony of the vocational expert, who opined there were a significant number of positions available that Ms. Vota could perform.[130] Accordingly, the ALJ determined that prior to April 9, 2012, Ms. Vota was "not disabled."[131] The ALJ noted that beginning on April 9, 2012, Ms. Vota's age category changed and a finding of "disabled" was reached by direct application of Medical-Vocational Rule 202.06.[132]

## III. Standard of Review

The Court must sustain the Commissioner's findings of fact if they are supported by substantial evidence and are free of legal error.[133] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[134] The standard of review is deferential, but the reviewing court must conduct a critical review of the evidence before affirming

---

[125] R. at 21.
[126] 20 C.F.R. 404.1520(g).
[127] 20 C.F.R. 404.1520(g).
[128] R. at 21.
[129] R. at 22.
[130] R. at 22.
[131] R. at 22.
[132] R. at 22.
[133] 42 U.S.C. § 405(g).
[134] *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).

the Commissioner's decision.[135] Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner and not the Court.[136] Although the ALJ need not address every piece of evidence or testimony presented, she must adequately discuss the issues and build a logical bridge from the evidence to her conclusions.[137] The Court will conduct a critical review of the evidence and will not uphold the ALJ's decision if it lacks evidentiary support or if the Commissioner applied an erroneous legal standard.[138]

## IV.    Analysis

Ms. Vota argues that this Court should reverse and remand the decision of the ALJ because the ALJ: (1) improperly weighed the opinions of two of Ms. Vota's treaters; (2) failed to consider all the limitations noted in her medical records; and (3) unfairly listed Ms. Vota's limitations in the hypothetical to the vocational expert, Ms. Tucker. This court finds no error on the part of the ALJ with respect to each of these arguments.

### A. The ALJ's Consideration of Dr. McVay's and Dr. Miller's Opinions

Ms. Vota first argues that the ALJ failed to give adequate weight to the opinions of two of Ms. Vota's treaters: Dr. McVay and Dr. Miller.[139] Ms. Vota also argues that the ALJ failed to give adequate reasons for rejecting these doctor's opinions.[140]

The ALJ may consider several factors in determining how much weight to afford the opinion, including: (a) the length, nature, and extent of the physician and patient's treatment relationship, (b) whether the physician specializes in the condition at issue, and (c) whether the opinion is supported

[135] *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).
[136] *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).
[137] *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).
[138] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).
[139] Vota Memo. in Support, p. 13, dkt. 16.
[140] Vota Memo. in Support, p. 15, dkt. 16.

with sufficient explanation.[141] If, after considering these factors, the ALJ decides to discount the physician's opinion, the decision will stand so long as the ALJ "minimally articulate[d]" her reasons - a very deferential standard that courts have deemed "lax."[142] For the reasons explained below, we find that the ALJ adequately considered these factors in deciding to afford the State agency doctors' opinions more weight than Ms. Vota's treaters.[143]

### (1) Weight given to Dr. McVay's Opinion

*(a) The length, nature and extent of Dr. McVay and Ms. Vota's treatment relationship*

The medical records affirm the ALJ's statement that Dr. McVay treated Ms. Vota for her back and neck pain only five times, and for only six months, in 2011 for the alleged disability impairments relevant to this appeal.[144] As the Plaintiff points out, he treated her in 2007 as her primary care physician.[145] However, this is prior to the alleged onset date of disability and that treatment was not for the alleged impairments relevant to her disability claim.[146]

*(b) Whether Dr. McVay specializes in the condition at issue*

The ALJ noted that Dr. McVay is a primary care physician.[147] Because Dr. McVay is not a specialist in the claimed impairments - specifically degenerative disc disease, back pain, anxiety and depression - this factor does not weigh in Ms. Vota's favor.[148] Accordingly, this is supportive of the

---

[141] 20 C.F.R. 404.1527(c).
[142] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)); 20 C.F.R. 404.1527(d)(2, 3, 5).
[143] *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (stating that an ALJ must "minimally articulate" his or her justification for rejecting or accepting evidence in disability findings).
[144] R. at 16, 362-76.
[145] Vota Memo. in Support, p. 14, dkt. 16.
[146] R. at 362.
[147] R. at 16.
[148] *See Elder*, 529 F.3d at 415-16 (affirming ALJ's decision to not afford treating physician substantial weight where treater was not a specialist in alleged impairment of fibromyalgia).

ALJ's decision to only afford Dr. McVay some weight.[149]

### (c) Whether the opinion is supported with sufficient explanation

The ALJ stated that she gave only "some weight" to Dr. McVay's conclusions. In a disability form filled out for Ms. Vota, Dr. McVay stated that she was "unsuitable for employment" and had numerous moderate limitations.[150] The ALJ stated that she gave only some weight to this opinion because, first, Dr. McVay's previous treatment records did not support the extensive physical or mental limitations he listed in the disability form and, second, the counseling notes from Ms. McCollum, Ms. Vota's counselor, did not support such extensive limitations.[151]

Dr. McVay's medical records revealed that Ms. Vota had various situational stressors and her condition was treated with prescription medication.[152] He did not describe any other extensive treatment nor did he include limitations in his treatment notes.[153] Further, the lumbar spine x-ray reviewed by Dr. McVay on September 20, 2011 states "no acute abnormality demonstrated."[154] Additionally, as the ALJ noted, Ms. McCollom treated Ms. Vota for situational stressors, such as her family problems, financial situation, and pain treatment.[155] But Ms. McCollum did not describe the need for the extensive limitations that Dr. McVay offered in the disability report.[156]

Pursuant to this factor, Ms. Vota also argues that Dr. McVay's opinions are supported by two of the State doctors, Dr. Langgut and Dr. Brister.[157] But she does not detail how Dr. McVay's

---

[149] *See id.*; see also 20 C.F.R. 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").
[150] R. at 355-57.
[151] R. at 20; *see Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (citing 20 C.F.R. 404.1527(d)(2)) ("[A] treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" ).
[152] R. at 363.
[153] R. at 363-368.
[154] R. at 365.
[155] *See* R. at 445-469.
[156] *Id.*
[157] Vota Memo. in Support, p. 14, dkt. 16.

opinions are consistent with these other doctor's reports.[158] We will, however, briefly make the comparison. Dr. Languut did not find that Ms. Vota was unsuitable for employment but instead noted that Ms. Vota had adequate judgment, responsibility and reasoning skills, and was only depressed on some days.[159] Similarly, in contrast to Dr. McVay's findings that Ms. Vota was significantly limited in her ability to work, Dr. Brister concluded that Ms. Vota was not significantly limited in nearly all tasks involving understanding and memory, sustained concentration and persistence, and social interaction and adaptation.[160] Accordingly, we find no error on the part of the ALJ with respect to this point.[161]

### (2) Weight given to Dr. Miller's Opinion

Similarly, the ALJ considered these same three factors in affording some weight to Dr. Miller.

#### (a) The length, nature and extent of Dr. Miller and Ms. Vota's treatment relationship

In affording Dr. Miller's opinion only some weight, the ALJ reasoned that Dr. Miller's medical records reveal only routine and conservative treatment of Ms. Vota's back and neck pain.[162] But Ms. Vota argues that the ALJ did not consider that Dr. Miller treated her 44 times, that he examined her twice a week ,and took x-rays and MRIs when he examined her.[163] However, the ALJ discussed in detail Dr. Miller's treatment of Ms. Vota.[164] In fact, the ALJ noted that Ms. Vota began treatment with Dr. Miller in April 2011 and that in July 2011, Dr. Miller reduced treatment sessions

---

[158] *Id.*
[159] R. at 328-30.
[160] R. at 346-47.
[161] *See Rice*, 384 F.3d at 371 (stating that an ALJ must "minimally articulate" his or her justification for rejecting or accepting evidence in disability findings).
[162] R. at 20.
[163] Vota Memo. in Support, p. 15, dkt. 16.
[164] R. at 16-17.

from three times a week to twice a week due to Ms. Vota's improvements.[165] As the ALJ noted, the records demonstrated that Ms. Vota only sought treatment with Dr. Miller in April 2011, after she was injured in a car accident and nearly a year after the alleged onset date of disability.[166]

### (b) Whether Dr. Miller specializes in the condition at issue

Next, the ALJ reasoned that Dr. Miller is a chiropractor, which is not an acceptable medical source whose opinions may be afforded controlling weight.[167] As Ms. Vota points out, an ALJ may use evidence from chiropractors to show the severity of the claimant's impairments. *Johnson v. Astrue* is instructive because there the plaintiff, like Ms. Vota, challenged the ALJ's decision to afford the chiropractor only some weight.[168] But the court in *Johnson* noted that even though the regulations allow the ALJ to consider a chiropractor's opinion in determining the severity of the claimant's impairments, "the ALJ has discretion to determine the appropriate weight to be accorded to that opinion."[169] The court held that it could not question the ALJ's determination as to the chiropractor because the other medical evidence supported the ALJ's decision.[170] Just as the court in *Johnson* could not question the ALJ's determination, we are hesitant to question the ALJ's decision to afford only some weight to Dr. Miller's opinion. As in that case, here the ALJ relied on other, additional, evidence to support her decision.[171]

### (c) Whether the opinion is supported with sufficient explanation

---

[165] R. at 17.
[166] R. at 16, 295.
[167] R. at 20.
[168] No. 06 C 6448, 2010 WL 4625549, at *3 (N.D. Ill. Nov. 2, 2010).
[169] *Id.*; *see* 42 C.F.R. 404.1513(d)(1).
[170] *Johnson*, No. 06 C 6448, 2010 WL 4625549, at *3.
[171] *See id.* ("[t]he ALJ has discretion to determine the appropriate weight to be accorded to [the chiropractor's] opinion."); *c.f. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) (noting that an ALJ may not completely ignore an entire line of evidence contrary to his or her findings).

In addressing this factor, the ALJ reasoned that the medical evidence "[did] not support limitations of standing for only 20 to 30 minutes at a time or less and that she needs to change positions every 20 to 30 minutes for 10 to 15 minutes."[172] The ALJ also emphasized that Ms. Vota continued to report improvement at subsequent treatment sessions and was able to ride her bike by June 2011.[173] Dr. Miller's reports affirm the ALJ's reasoning; they explain Ms. Vota's improvements and state that she could ride a bike in June 2010.[174] Further, as the ALJ noted, the medical records show that Ms. Vota had limited rage of motion in her neck and back but a normal gait and normal reflexes in her legs and arms.[175] The ALJ also noted, and the records confirm, that Dr. Miller's opinion was inconsistent with a spinal MRI in 2011 which revealed only mild abnormalities.[176]

Plaintiff argues that Dr. Miller's opinion is consistent with Dr. Koehn's reports, and alleges that the ALJ failed to consider this doctor's reports in her findings.[177] But the ALJ considered Dr. Koehn's reports in her decision. And, as the Commission points out, the reports are not consistent with Dr. Miller's opinion.[178] Dr. Koehn's MRI completed in 2008 reveals only mild abnormalities and the 2009 report provides that Ms. Vota has the functional capacity for light to light medium work.[179] Thus, Dr. Koehn's reports do not support Dr. Miller's opinion that Ms. Vota had greater limitations nor do they discredit the ALJ's decision to give Dr. Miller's opinion only some weight.

### B. The ALJ's Consideration of State Agency Opinions

Next, Ms. Vota contends that in her RFC determination, the ALJ ignored or improperly

---

[172] R. at 20.
[173] R. at 20.
[174] R. at 308-314.
[175] R. at 16, 301-302.
[176] R. at 17, 365-367; *see Butera v. Apfel*, 173 F.3d 1049, 1056-57 (7th Cir. 1999) (affirming the ALJ's decision which reasoned, in part, that the medical signs and findings, including x-rays and MRIs, failed to support the treater's opinion).
[177] Vota Memo. in Support, p. 15, dkt. 16.
[178] R. at 16.
[179] R. at 293-296; Commissioner Memo. in Support, p. 5, dkt. 19.

credited certain findings from three State agency reviewers, Dr. Pardo, Dr. Brister and Dr. Langgut.[180] First, regarding Dr. Pardo, Ms. Vota argues that the ALJ should not have relied on Dr. Pardo's notation that Ms. Vota was able to perform light household chores.[181] Contrary to Ms. Vota's assertion, the ALJ did not rely on Dr. Pardo's remark that Ms. Vota was able to perform light household chores when she evaluated his opinion.[182] While the ALJ mentioned that Ms. Vota was able to perform light household chores, she did not mention that in the part of her opinion where she gave Dr. Pardo's opinion great weight.[183]

Ms. Vota also argues that the ALJ ignored Dr. Pardo's notation that her pain complaints restrict her movements.[184] Even though Dr. Pardo noted that Ms. Vota's pain restricted her movements, he ultimately concluded that Ms. Vota was capable of light work with some postural limitations.[185] Additionally, both Dr. Gotway and Dr. Hudspeth agreed with Dr. Pardo's opinion that Ms. Vota was capable of light work with some postural limitations.[186]

Ms. Vota also contends that the only support for the ALJ's finding is the checking of boxes by Dr. Pardo to establish her exertional limitations,[187] citing to *Criner v. Barnhart*.[188] The court in *Criner* held that "reports from *nonexamining physicians* cannot, by themselves, trump the findings from treating sources."[189] In that case, the only medical evidence that contradicted the treating physician's opinion was the opinion of a reviewing state agency physician's report.[190] But here, Dr.

---

[180] Vota Memo. in Support, p. 11-13, dkt. 16.
[181] *Id* at 11-12.
[182] R. at 19.
[183] R. at 19.
[184] Vota Memo. in Support, p. 11-12, dkt. 16.
[185] R. at 319-25.
[186] R. at 435-437.
[187] Vota Memo. in Support, p. 12, dkt. 16; Vota Reply Brief, p. 2, dkt. 21.
[188] 208 F. Supp. 2d 937 (N.D. Ill. 2002).
[189] 208 F. Supp. 2d at 954 (emphasis added).
[190] *Id.*

Pardo evaluated Ms. Vota and did not simply review her records.[191] Further, Dr. Pardo's report is supported by the reports of Dr. Gotway and Dr. Hudspeth, which also contradict the treater's opinion. His report does not, "by itself," trump the findings from treating sources.[192]

Second, Ms. Vota contends that the ALJ ignored Dr. Brister's indication that Ms. Vota has limitations in completion of tasks, memory and concentration[193] when, in fact, the ALJ considered these limitations in her RFC determination. Dr. Brister opined that Ms. Vota had mild restrictions in daily living activities and social functioning and had moderate limitations in concentration, persistence and pace.[194] The ALJ emphasized that Dr. Langgut's testing revealed that Ms. Vota exhibited difficulty with long term memory, but that her immediate recall and short term memory were intact.[195] The ALJ noted that, similarly, Dr. Brister found that Ms. Vota could recall, understand, and execute simple operations of a routine and semi-skilled nature and adapt to routine changes.[196] In light of these considerations, the ALJ appropriately adopted the opinion of Dr. Brister, and accommodated for any limitations in concentration by reducing the RFC to unskilled work that could be learned by demonstration in 30 days or less.[197]

Finally, Ms. Vota also contends that the ALJ ignored the findings of Dr. Langgut. Although the ALJ does not mention Dr. Langgut by name, she clearly discusses this doctor's findings in her opinion and cites to his medical records. For example, she noted that "[a]t a July 2011 psychological consultative examination, the claimant denied daily symptoms of depression. Rather, she reported that she had symptoms only on some days. During the evaluation, her emotions were consistent with

---

[191] R. at 325 (records reflecting that Dr. Pardo evaluated Ms. Vota in July 2011); *see Criner*, 208 F. Supp. 2d at 954 (noting that the treater in *Criner* was a nonexamining physician, rather than an examining physician).
[192] R. at 325 (records reflecting that Dr. Pardo evaluated Ms. Vota in July 2011).
[193] Vota Memo. in Support, p. 12, dkt. 16.
[194] R. at 14, 19, 342.
[195] R. at 14, 19.
[196] R. at 18.
[197] R. at 18.

her thoughts, and her activity level was normal."[198] Ms. Vota asserts that the ALJ did not mention

Dr. Langgut's findings that Ms. Vota had fatigue and anxiety.[199] But the ALJ noted that Dr. Langgut

"diagnosed the claimant with dysthymic disorder and anxiety with panic features."[200] The ALJ also

acknowledged that Ms. Vota testified that she had fatigue at her hearing.[201] Even so, Ms. Vota never

listed fatigue as a physical or mental condition that limited her ability to work in her disability

application, nor did she mention her alleged fatigue at the hearing before the ALJ.[202]

## C. The Vocational Expert's Hypothetical

Lastly, Ms. Vota contends that the ALJ's hypothetical posed to the vocational expert did not

fully account for all of Ms. Vota's disabilities, including the moderate limitations in Dr. Brister's

opinions, Dr. Langgut's mention of fatigue, and Dr. McVay's pain restrictions.[203] Ms. Vota argues

that the ALJ's failure to accommodate these limitations was improper.[204]

But the Seventh Circuit has found that where the ALJ expressly incorporates all of the RFC

findings into the hypothetical posed to the vocational expert, the hypothetical is proper.[205] The ALJ

need only include the limitations that were supported by the medical evidence in the record.[206]

Likewise, the ALJ need only include limitations and impairments that she accepts as credible.[207]

We reject Ms. Vota's argument because the hypothetical question posed to the vocational

---

[198] R. at 18.
[199] Vota Memo. in Support, p. 13, dkt. 16.
[200] R. at 18.
[201] R. at 15.
[202] R. at 32-52, 176.
[203] Vota Memo. in Support, p. 15, dkt. 16.
[204] *Id.*
[205] *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).
[206] *Halsell v. Astrue*, 357 Fed. Appx. 717, 723 (7th Cir. 2009).
[207] *Similia v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).

expert, Ms. Tucker, mirrored the ALJ's RFC determination:[208]

> Q: I ask that you assume an individual of the claimant's age, education and work experience. An individual would have the residual functional capacity to perform light work as defined in the regulations. Individual could occasionally climb ramps and stairs, ropes and scaffolds. Individual could occasionally balance and stoop, but never kneel and crouch and crawl. Individual, [INAUDIBLE] 30 days or less. Such an individual would be able to perform the claimant's [sic] past relevant work?[209]

Even if this Court found that the hypothetical above did not account for Ms. Vota's limitations, the next hypothetical question posed to Ms. Tucker again accounted for her mental and physical limitations: "[i]f I were to further limit this individual to jobs involving occasional decision making, occasional change in work setting, no fast paced or production quotas. What effect would that have on the number of jobs?"[210] While this would reduce the number of available positions quite drastically, there would still be a substantial number of positions available for a person with those limitations.[211] Therefore, because the hypothetical questions posed to the vocational expert satisfied the Seventh Circuit's requirement that they incorporate the ALJ's RFC, we find no reversible error.

---

[208] The ALJ held that Ms. Vota has the RFC to "perform light work as denied in 20 C.F.R. 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; and she can perform unskilled work tasks that can be learned by demonstration or in 30 days or less." R. at 15.
[209] R. at 63.
[210] R. at 64.
[211] R. at 64.

## V.       Conclusion

For the reasons outlined, Ms. Vota's motion for summary judgment is denied [dkt. 15] and

the Commissioner's motion for summary judgment is granted [dkt. 18].


**IT IS SO ORDERED.**

**ENTERED: <u>December 18, 2013</u>**

**UNITED STATES MAGISTRATE JUDGE**

**Susan E. Cox**